**Bonjean Law Group, PLLC**
**1000 Dean St., Ste. 422**
**Brooklyn, New York 11238**
**Tel: (718) 875-1850**
**Fax: (718) 230-0582**
ashley@bonjeanlaw.com

Attorney for Plaintiff

---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

---

**ANTHONY MOORE**,

      Plaintiff,

    v.                                                                                                14-cv-05092

**CITY OF ATLANTIC CITY, ATLANTIC**
**CITY POLICE DETECTIVE FRANCO**
**SYDNOR AND RETIRED POLICE CHIEF**
**ERNEST JUBILEE**

      Defendants.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE**

    Defendants move to bifurcate Plaintiff's claims against defendant Sydnor from his claims against the City of Atlantic City brought pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). Plaintiff respectfully submits that trial on Plaintiff's claims against the individual defendant officers should *not* be bifurcated from Plaintiff's *Monell* claims for two reasons: (1) much of the evidence the City claims is solely *Monell* evidence is admissible against defendant Sydnor pursuant to Fed. R. Civ. P. 404(b) or for other non-propensity purposes; and (2) the jury

1

must be permitted to hear evidence of *both* individual liability and City liability in the same proceeding to fully understand the relationship between the claims. Indeed, it would be nearly impossible for a jury to determine whether a City policy, practice or custom is the moving force behind a particular constitutional violation without hearing evidence about the specific constitutional claim at issue in the case. Accordingly, if these matters are bifurcated, it seems likely that evidence presented at a trial on the claims against Sydnor would have to be repeated at a second trial against the City thereby wasting judicial resources rather than saving them.

    **A. Bifurcation would be a waste of judicial resources because a significant number of witnesses *are* relevant to *both* individual and City liability in this matter.**

    Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The decision to bifurcate is within this Court's sound discretion. *In re Bayside Prison Litigation,* 157 Fed. Appx. 545, 547 (3d Cir. 2005). However, in determining whether the movant can establish granting such a motion is warranted for convenience, to avoid prejudice, or to expedite and economize, Defendants fail to make their case.

    The Defendants mistakenly claim that a vast majority of Plaintiff's witnesses and exhibits are only admissible to as *Monell* liability. This is inaccurate for a number of reasons. First, the City overlooks that a significant portion of Plaintiff's evidence may be admissible against Defendant Sydnor pursuant to Fed. R. Civ. P. 404(b) irrespective of the *Monell* question. Specifically, Plaintiff names twenty-six (26) witnesses who have firsthand experiences with Defendant Sydnor that may provide relevant testimony pending this Court's ruling on Motions in Limine particularly considering the fact that Defendant Sydnor testified during his deposition that his use of the baton to Plaintiff's head was an accident. (*See,* Plaintiff's response to

Defendants Motion in Limine).

Secondly, Plaintiff contends multiple witnesses on his witness list are relevant for *both* *Monell* and individual liability. Just by way of example, Plaintiff witness Colleen Davis was present for the underlying incident, but she also attempted unsuccessfully to file an internal affairs complaint against Defendant Sydnor in person at the Atlantic City Police Department. Ms. Davis's testimony will be relevant for individual liability but will also go to Plaintiff's claim that the City of Atlantic City fails to meaningfully investigate civilian internal affairs complaints and actually discourages complainants from making complaints against its officers.

Third, Plaintiff identifies as potential witnesses three Bally's employees, Detective Sydnor and Sergeant Harry Brubaker who were all present on October 7, 2012 and can provide first-hand knowledge about the incident. These witnesses are also relevant to the question of whether the City had a *de facto* policy, practice or custom that permitted its officers to act as "unsupervised" bouncers at drinking establishments while conducting so-called special employment details. Plaintiff alleges officers working special employment details routinely escalated tensions with drunk and over-served tourists that resulted in unnecessary and serious uses of force. Indeed, more than half of the internal affairs complaints made against Sydnor derived from a special employment detail, including the one at issue here. The interactions between Atlantic City Police Officers and Bally's employees during special employment details are relevant to both individual and City liability. If the trial is bifurcated, some, if not all of these witnesses would have relevant testify to give regarding whether Atlantic City Police Officer's functioned as unsupervised bouncers at casinos and clubs or sworn law enforcement personnel. They would have to be called twice and this would be an expensive burden on the Plaintiff and an undue burden on the witnesses.

Fourth, Sergeant Macready, the internal affairs investigator in this matter, is a relevant witness on individual liability and *Monell* liability. First, Macready interviewed defendant Sydnor and other witnesses in this matter and therefore is a relevant witness on the claims against Sydnor. Second, Macready also has relevant testimony to provide on the internal affairs function and whether the City has a practice or custom of conducting superficial internal affairs investigations. Macready will be examined specifically about his internal affairs investigation of this case and whether it comported with Attorney General guidelines, evidence directly relevant to *Monell* liability and important for establishing a nexus between the individual claim and Plaintiff's claim that the City has a "sham" internal affairs process.

As another example, Plaintiff asserts that in order to prove individual liability, he will have to put on evidence relating to Atlantic City's use of force policy and Officer Sydnor's training. Plaintiff contends that Defendant Sydnor used excessive and deadly force against him by hitting him over the head with a baton multiple times. Plaintiff is required to prove that if the jury finds Defendant Sydnor did in fact hit Plaintiff over the head, that force would be excessive. This testimony would again be relevant to prevail on Plaintiff's claims against Atlantic City namely that Atlantic City has an official policy or custom that was the moving force behind the violation of Plaintiff's constitutional rights. This is another example that would require Plaintiff to recall the same individuals in both trials.

It is difficult to envision every scenario that would require Plaintiff to recall witnesses on his witness list if this case was bifurcated. But the foregoing provides a number of examples that demonstrate the serious risk of overlap and the likelihood that bifurcation will actually prolong these proceedings rather than expedite them.

Lastly, given the fact that there is video evidence in this case directly rebutting Defendant

Sydnor's claim that he accidently hit Plaintiff over the head with a baton multiple times, there is a strong likelihood that Plaintiff will establish that he suffered a constitutional violation at the hands of defendant Sydnor. Because the evidence of individual liability is overwhelming, there is little doubt that if this Court bifurcates the claims, the parties will be forced to re-try a large portion of the individual liability case to a second a jury. The Defendants clearly overstate the degree to which bifurcation would expedite or economize the trial of this case and this Court should deny the request for bifurcation.

**B. As Judge Kugler Observed in the *Stadler* matter, in order for a Jury To Decide Whether the City's Policy, Practice, or Custom is the Moving Force Behind the Constitutional Violation, the Jury Must Hear Evidence of *Both* Individual and City Liability During the Same Proceeding.**

Plaintiff's counsel recently completed a very similar trial before Judge Robert Kugler that was not bifurcated. During those proceedings Judge Kugler expressly acknowledged the value of trying the individual claims and *Monell* claims simultaneously.

During the *Stadler* trial, Judge Kugler specifically noted on the record,

> "While on the record, there's something I wanted to put on. Because I've been giving this some thought and this goes back to the defendant's motion to sever, which I denied. And having presided and having heard the testimony I've heard so far, and this is not an editorial comment as to who is winning and who is losing, it just reaffirms my belief it was inappropriate to sever the individual from the -- counts against the individuals from the counts against the city. It would just be -- there's just too much overlap here…
>
> It would be impossible, I think, for the jurors to understand the allegations against the city without knowing all the details of plaintiff's allegations against individual officers. So, there would be a tremendous risk of having to repeat a significant amount of testimony before this jury. I understand there's no questions that there's prejudice to the individual defendants by trying this case against the city also, but I've done my best, I've instructed the jury on numerous times that the evidence could only be used against the city and not the individuals."

*See*, Exhibit A, Page 2760 - 2761, Lines 10 - 25, 1-10

As mentioned previously, Plaintiff agrees with Judge Kugler's assertion that it would be inappropriate to sever the individual from the City because there is too much overlap. The Third Circuit has long held that prejudice does not arise "just because all evidence adduced is not germane to all counts against each defendant . . . " *In re Bayside Prison Litig.,* 157 Fed. Appx. at 548. Potential prejudice to the individual defendants that may arise from the jury hearing *Monell* evidence in a single trial can be remedied with cautionary warnings, limiting instructions, and other instructions to the jury. As the Third Circuit observed in *Bayside Prison, supra,* courts presume that juries follow such instructions. *Id*. at 549. Courts across the state routinely rely on this principle when denying motions to sever in criminal prosecutions. Plaintiff is confident with this Courts ability to avoid any prejudice to Defendant Sydnor.

Arguably, the *Stadler* verdict suggests that the defendant officers were *not* prejudiced by facing trial with the City as their co-defendant but actually gained a benefit from the single proceeding. After the five-week trial, the jury signaled loud and clear that it held the City far more responsible for the officers' conduct than the officer's themselves. Indeed, the evidence against the City was so overwhelming, it likely saved two of the officers from liability altogether and another officer from punitive damages.

In sum, the City advocates bifurcation on the theory that bifurcation has the potential to expedite and economize trial. In fact, bifurcation is likely to have the opposite effect. The likelihood that Plaintiff demonstrates that his permanent injuries were caused by a Fourth Amendment violation are extraordinarily high. Bifurcation would be a waste of judicial resources.

Respectfully Submitted,

/s/ Ashley Cohen, Esq.

Cc:    Steven Glickman, Esq.
        Morrison Fairbarin, Esq.